UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHARLES ABBOTT,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI[1],<br>Acting Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)  No. 3:20-CV-00216-HBG<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 20] and Defendant's Motion for Summary Judgment [Doc. 22]. Charles Abbott ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the following reasons, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I.   PROCEDURAL HISTORY**

On March 21, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on November 23, 2016. [Tr. 128, 238, 249, 279]. After his application was denied initially and upon

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 184]. A hearing was held on July 31, 2018. [Tr. 42]. On January 17, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 14–38]. The Appeals Council denied Plaintiff's request for review on March 30, 2020 [Tr.1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on May 21, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity since November 23, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), spine disorder, anxiety disorder, depressive disorder, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and/or carry 20 pounds occasionally, 10 pounds frequently. He can stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday, and can sit, with normal breaks, for a total of 6 hours per 8-hour workday. He can

never climb ladders, ropes, or scaffolds; and can frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. In terms of environmental limits, he should avoid all exposure to respiratory irritants such as fumes, odors, dust, gases, poorly ventilated areas, and industrial chemical fumes. He should avoid concentrated exposure to extreme heat, extreme cold, and humidity. In terms of mental limitations, he is restricted to the performance of simple, routine, and repetitive tasks. He is limited to low-stress work, which the undersigned defines as requiring no judgments or decisions to be made on executive matters, and few changes in a routine work setting. Lastly, he can never interact with the general public; and he can only occasionally interact with co-workers and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 31, 1971, and was 45 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 23, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 19–33].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes*

*v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his

5

past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**V.    ANALYSIS**

Plaintiff argues that the ALJ failed to properly analyze Dr. James Maguire's opinion pursuant to the treating physician's rule. [Doc. 21 at 10]. Specifically, Plaintiff argues that Dr. Maguire is a treating source whose opinion should have been given controlling weight because his opinion was "well-supported by medically accepted clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." [*Id.* at 10–11 (quoting 20 C.F.R. §§ 404.1527(cd)(2), 416.927(cd)(2))]. Plaintiff also argues that the ALJ failed to apply certain required factors—including: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the

opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—when she decided to not afford Dr. Maguire's opinion controlling weight. [*Id.* at 11 (citing 20 C.F.R. § 404.1527(c))]. Finally, Plaintiff argues that an ALJ who discounts the opinion of a treating physician must provide "good reasons" for her decision to do so "which are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" [*Id.* (citing SSR 96-d9; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007))]. Plaintiff requests judgment based on the Administrative Record and asks this Court to remand his Social Security Disability and Supplemental Security Income claims for further consideration. [*Id.* at 15].

Plaintiff maintains that in the ALJ's decision, she "gave little weight to the opinion of Dr. Maguire that [Plaintiff] would 'benefit from the continued use of a cane' because she concluded that his opinion was that a cane would be helpful but not required." [*Id.* at 12 (quoting Tr. 31)]. The Plaintiff then provides that the ALJ "subsequently stated that she factored the use of a cane into the residual functional capacity assessment to the extent it is consistent with the medical evidence of record" [Tr. 31] but that "she limited [Plaintiff] to standing and walking a total of 6 hours per day." [Doc. 21 at 12]. Plaintiff argues that the ALJ's statements were not in harmony, stating that "[i]t is unclear how the ALJ's residual functional capacity assessment reflects limitations set forth with use of a cane." [*Id.*].

Plaintiff was seen by Dr. Maguire at OrthoTennessee on May 3, 2018, reporting pain in his back with radiation into the lower extremities bilaterally, worse on the right than the left. [Tr. 476]. Plaintiff indicated that his back pain was worse with standing and walking and that he walked with a cane. [*Id.*]. Dr. Maguire noted that on physical exam, Plaintiff was overweight and deconditioned and had tenderness over the L5-S1 facet joints. [Tr. 479]. Extension of Plaintiff's

7

back worsened the pain and he had some EHL weakness on his right side. [*Id.*]. Dr. Maguire suggested that Plaintiff consider a course of oral prednisone and a transforaminal lumbar epidural steroid block at the L5-S1 level on the right side, and that if he did not respond to the prednisone, he suspected Plaintiff would be a candidate for surgery in the form of a decompression instrumented fusion at the L5-S1 level. [*Id.*].

Plaintiff returned to Dr. Maguire on June 14, 2018, stating that he had received about one week of relief from the injection and that his symptoms occurred constantly with his best pain at 8/10 and his worst pain at 10/10. [Tr. 482]. Dr. Maguire again noted that Plaintiff was a large, somewhat overweight and deconditioned individual who used a cane and had tenderness over the L5-S1 joints. [Tr. 484]. Dr. Maguire stated that Plaintiff was too high risk to consider surgery at that time. [*Id.*].

Plaintiff argues that Dr. Maguire's opinion is consistent with Plaintiff's testimony at his hearing with the ALJ. [Doc. 21 at 14]. Plaintiff testified that he used the cane at home, even when going to the bathroom. [Tr. 69]. Plaintiff claims that he attempts to go without a cane, but his leg gives out and causes him to fall. [*Id.*]. Plaintiff reported that he could walk 10–15 minutes, stand for 10–15 minutes, and sit for 20–25 minutes. [Tr. 54–55]. Plaintiff stated that his cane was prescribed by his doctor and that he cannot walk very far without it. [*Id.*].

Plaintiff states that Dr. Maguire is an orthopedic doctor who has treated Plaintiff over a period of three visits, including a review of a lumbar MRI and medial branch block. [Doc. 21 at 14]. Plaintiff argues that Dr. Maguire's opinion regarding Plaintiff's need for a cane is consistent with that of his treating nurse practitioner, Christina Sanks, and with Plaintiff's hearing testimony. [*Id.*]. Plaintiff takes issue with the ALJ giving "some weight to the opinions of the non-examining, non-treating state agency consultants who never examined [Plaintiff] nor reviewed his records

8

prior to objective testing, including x-rays and MRI results" while giving little weight to Dr. Maguire's opinion. [*Id.* at 14–15]. Plaintiff continues:

> [i]f the ALJ erred by failing to include the use of a cane in the RFC, it is not harmless error in this case because it may be determinative. (*see* AR 65–66 (The vocational witness testified that an individual who needed a hand-held assistive device in the dominant right hand for standing and walking would be unable to perform work at medium, light, or sedentary level because the worker would be considered a one-armed worker.))

[*Id.* at 15]. Thus, Plaintiff asserts that the ALJ committed reversible error when she gave the opinion of treating physician Dr. Maguire little weight without good reasons and drew an allegedly inaccurate conclusion that the cane was not required, making her decision unsupported by substantial evidence. [*Id.*].

The Commissioner argues that the ALJ *did* give "good reasons" for affording little weight to Dr. Maguire's opinion and that the RFC finding is supported by substantial evidence in the record. [Doc. 23 at 14]. The Commissioner requests for this Court to defer to the ALJ's findings because of the existence of substantial evidence in the record, and for this Court to affirm the disability decision. [*Id.* at 20].

The Commissioner first points to Social Security Ruling 96-9p, saying it:

> Directs the ALJ to consider the particular facts of every case, noting that a hand-held assistive device may only be needed for certain activities such as prolonged ambulation. For this reason, SSR 96-9p states there must be medical documentation establishing the need for a cane, but there must also be a description of the circumstances when the cane would be needed.

The Court acknowledges that Social Security Ruling 96-9p provides the operative law regarding medically required hand-held assistive devises such as canes:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be

9

> medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996). The Sixth Circuit has explained that unless a cane or other assistive device is found to be a necessary device, it will not be considered an exertional limitation that reduces a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). "SSR 96–9p requires medical documentation of the need for the assistive device, not just a suggestion by a doctor relating to a claimant's continued use of an assistive device that the claimant purchased on his or her own." *Perry v. Berryhill*, No. 1:16-CV-2970, 2018 WL 1393275, at *4 (N.D. Ohio Mar. 20, 2018); *see Parrish v. Berryhill*, No. 1:16-CV-1880, 2017 WL 2728394, at *12 (N.D. Ohio June 8, 2017) ("While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required.") (collecting cases), *report and recommendation adopted by*, 2017 WL 2720332 (N.D. Ohio June 23, 2017). The Court acknowledges that Dr. Maguire signed a note dated August 14, 2018 providing that "[Plaintiff] has severe bilateral foraminal stenosis and I do believe [Plaintiff] would benefit from continued use of a cane. [Tr. 586]. Dr. Maguire also signed a post-decision note dated February 28, 2019 and provided that "[Plaintiff's] Cane is a Medical Necessity." [Tr. 13].

The second note from Dr. Maguire directly contradicts the ALJ's finding that the cane was only beneficial to Plaintiff and not medically necessary; however, as the Court explains above, SSR 96-9p requires medical documentation "describing the circumstances for which it is needed." The Court notes that it can remand a case for further consideration of a claim in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). Such remand "is appropriate 'only if the

10

evidence is "'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."). Plaintiff has made no such argument, and in any case, the Court finds that no description was made in the medical documentation as to the specific circumstances that Plaintiff would need a cane, as required by SSR 96-9p. This suggests that Dr. Maguire's second letter would not be material anyway as it would not conform to SSR 96-9p's requirements.

The Commissioner argues that the "ALJ properly evaluated [Dr. Maguire's] opinion, and gave 'good reasons' for concluding that the use of a cane did not need to be included in the RFC." [Doc. 23 at 13]. The ALJ considered Dr. Maguire's belief that Plaintiff would benefit from the use of a cane, which caused the ALJ to conclude that it was Dr. Maguire's opinion that a cane could be *beneficial* but was not an explicit medical necessity for Plaintiff. [Tr. 31]. The Commissioner maintains that the ALJ's decision is supported by substantial evidence in the record, supporting her findings regarding Dr. Maguire's opinion and the weight afforded to it, including the objective medical evidence, Plaintiff's treatment, Plaintiff's daily activities, and the medical opinions. [Doc. 23 at 13].

The Court finds that the ALJ's evaluations of the medical opinions were proper, and she presented "good reasons" for affording little weight to treating physician Dr. Maguire's opinion. Specifically, the ALJ evaluated all the medical opinions in her decision. The ALJ considered "Dr.

11

Misra's assessment that the claimant has no impairment-related physical limitations because the medical evidence of record shows that the claimant has some medical limitations that should be incorporated into the residual functional capacity[,]" assigning no weight to the opinion. [Tr. 30]. The ALJ gave "great weight to Dr. Sweeney's opinion because it is generally consistent with medical evidence of record." [*Id.*]. The ALJ gave some weight to State Agency medical consultant Dr. Thomas Thrush who opined "that the claimant could perform work at the medium physical exertional level with postural limitations and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation . . . ." [*Id.*]. She evaluated Dr. Thrush's opinion in such a manner because the environmental limitations cited by him were supported by the record and the postural limitations are mostly supported by the evidence; however, the weight restrictions were not sufficient based on the updated medical evidence of record. [*Id.*]. The ALJ gave great weight to State Agency psychological consultant Fawz Schoup, Ph.D., because his opinion concerning the Plaintiff's cognitive state was generally consistent with the medical evidence of record. [*Id.*]. The ALJ gave some weight to State Agency medical consultant Dr. Anita Johnson's opinion that the Plaintiff could perform work at the medium physical exertional level with postural limitations and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation because the environmental limitations were supported by the record and the postural limitations are mostly supported by the evidence; however the weight restrictions were not sufficient based on the updated medical evidence of record. [Tr. 31]. Lastly, the ALJ found that Dr. Maguire's opinion appeared to indicate that the use of a cane to assist with ambulation is helpful to the Plaintiff but not required; thus, she afforded little weight to Dr. Maguire's opinion "and it is factored into the residual functional capacity to the extent that it is consistent with the other medical evidence of record." [*Id.*].

In considering a claim of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c); 416.927(c)(2).3 However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how she considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." Id. (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend

13

to support or contradict the opinion' may be considered in assessing any type of medical opinion." Id. (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 1996 WL 374180, at *3 (July 2, 1996).

Here, the ALJ considered and accurately summarized Dr. Maguire's opinion when she determined that it was not necessitating a cane for Plaintiff but instead providing that one may be beneficial to him. [Tr. 31]. Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While

14

plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Accordingly, the ALJ provided good reasons for affording Dr. Maguire's opinion little weight, and substantial evidence supports her finding.

In any case, the ALJ *did* still account for Dr. Maguire's opinion regarding Plaintiff's severe bilateral foraminal stenosis, and she incorporated restrictions in the RFC that were "consistent with the other medical evidence of record." [*Id.*]. This implies that the ALJ determined that parts of Dr. Maguire's opinion were inconsistent with the other medical evidence, and inconsistency is one of the "good reasons" that an ALJ can rely on when affording less weight to a treating medical physician's opinion. *See* 20 C.F.R. § 404.1527(c)(4); *see also*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285–86 (6th Cir. 2009); *see also Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion."); *Simmons v. Berryhill*, No. 4:17-CV-15-TWP-CHS, 2018 WL 1413179, at *5 (E.D. Tenn. Mar. 21, 2018) ("The ALJ's analysis of a treating physician's opinion may cite inconsistencies in the evidence, but the ALJ need not refer again to specific inconsistencies again when those were listed earlier in the decision.").

The ALJ also considered other parts of the medical evidence from the record. She noted that Plaintiff had painless back range of motion and was treated with medication for back pain. [Tr. 26]. She considered the imaging of Plaintiff's back, showing degenerative findings and stenosis. [*Id.*]. She noted that Plaintiff asked his nurse practitioner for a cane in April 2018. [*Id.*]. She considered that when Plaintiff saw Dr. Maguire in May 2018, he was noted as having a normal

15

gait and station as well as normal balance. [Tr. 27, 476]. Plaintiff's gait, balance, and posture were normal at his visit with Dr. Maguire in June 2018 despite Plaintiff using a cane. [Tr. 27]. The preceding instances are a nonexclusive list of the medical proceedings and examinations cited to by the ALJ in her decision, and they further credit the ALJ's finding that it was Dr. Maguire's opinion that a cane would be beneficial instead of strictly necessary.

The Court finds that the ALJ appropriately considered the medical opinions, including that of Dr. Maguire's, in making her disability decision and that substantial evidence exists in support of her decision. *See Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 75–76 (6th Cir. 2012) (concluding that the ALJ properly discounted the plaintiff's treating psychiatrist's opinion as inconsistent with his own objective clinical findings in his treatment notes and other evidence in the record); *Dungey v. Comm'r of Soc. Sec.*, No. 1:12-CV-1190, 2014 WL 1232661, at *10 (W.D. Mich. Mar. 25, 2014) (concluding that the ALJ's decision to give less than controlling weight to the plaintiff's treating psychiatrist's opinion was supported by substantial evidence because the plaintiff "responded well to conservative treatment and demonstrated significant improvement when taking her medication as prescribed").

The Court notes that the ALJ was not required to list every possible factor when deciding to afford Dr. Maguire's opinion little weight as opposed to controlling weight; nonetheless, the ALJ did provide "good reasons." Those reasons included her evaluation of the consistency of Dr. Maguire's opinion with the weight of the medical record in its entirety and with the objective medical evidence from prior medical examinations of Plaintiff, his daily activities, and other factors. Further, the ALJ still utilized Dr. Maguire's opinion to the extent that it was consistent with the other evidence of record when making her RFC finding. [Tr. 31]. The ALJ's use of Dr. Maguire's opinion was consistent with the opinion he gave in his post-hearing letter, and

16

substantial evidence exists in the record to support the ALJ's evaluation of Dr. Maguire's opinion.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 20**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge